IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRIFFITH FOODS INTERNATIONAL INC. F/K/A GRIFFITH LABORATORIES U.S.A., INC., and GRIFFITH FOODS GROUP INC. F/K/A GRIFFITH LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Defendant. | Case No.: 1:21-cv-6403 |

## COMPLAINT

Plaintiffs Griffith Foods International Inc. f/k/a Griffith Laboratories U.S.A., Inc. and Griffith Foods Group Inc. f/k/a Griffith Laboratories, Inc., by and through its attorneys, Perkins Coie LLP, for its Complaint for breach of contract and declaratory judgment pursuant to 28 U.S.C. § 2201 against National Union Fire Insurance Company of Pittsburgh, PA states as follows:

## THE PARTIES

1. Plaintiff Griffith Foods International Inc. f/k/a Griffith Laboratories U.S.A., Inc. ("GFI") is a corporation incorporated under the laws of Delaware with its principal place of business in Illinois. Plaintiff Griffith Foods Group Inc. f/k/a Griffith Laboratories, Inc. ("GFG") is a corporation incorporated under the laws of Illinois with its principal place of business in Illinois. Plaintiffs shall be referred to collectively herein as "Griffith."

2. Defendant National Union Fire Insurance Company of Pittsburgh, PA. ("AIG") is an AIG member company incorporated in Pennsylvania with its principal place of business in New York.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court additionally has jurisdiction under 28 U.S.C. § 2201 because there is an actual controversy between the parties concerning the parties' rights and obligations under the insurance policies at issue.

4. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of property that is the subject of this action is situated in this district. AIG is subject to this Court's personal jurisdiction with respect to this action, because at all relevant times, AIG was registered with the Illinois Department of Insurance to transact insurance business within the State of Illinois and transacted insurance business within the State, including selling to Griffith the insurance policies at issue in this action.

**NATURE OF THE ACTION**

5. This is a civil action for breach of contract and declaratory relief arising out of AIG's wrongful failure and refusal to defend and indemnify Griffith with respect to hundreds of pending suits alleging bodily injuries, which for purposes of discovery have been consolidated and captioned *In re: Willowbrook Ethlyene Oxide Litigation*, Circuit Court of Cook County, Illinois Consolidated Case No. 18-L-010475 (the "Underlying Suits") under two commercial general liability insurance policies issued by National Union to Griffith (among other insureds) ("Policies").

6. AIG denied coverage in full for the Underlying Suits for two alleged reasons: (1) Griffith Foods International Inc. and Griffith Foods Group Inc. purportedly do not qualify as "insureds" under the Policies; and (2) the Underlying Suits purportedly run afoul of the "sudden

and accidental" pollution exclusions in the Policies. For the reasons explained in detail below, AIG's denial is wrongful. Moreover, due to AIG's failure to file a declaratory judgment action concurrently with its denial of a duty to defend Griffith in the Underlying Suits, AIG is estopped under Illinois law from asserting defenses to coverage.

## GENERAL ALLEGATIONS

### The Policies

7. AIG issued General Liability-Automobile Policy No. GLA9457058RA to GFI (then known as Griffith Laboratories U.S.A., Inc.) and GFG (then known as Griffith Laboratories, Inc.) for the policy period of September 30, 1983 to September 30, 1984 (the "83-84 Policy"). A true and correct copy of the 83-84 Policy is attached as **Exhibit A**.

8. AIG issued General Liability-Automobile Policy No. GLA1940011RA to GFI (then known as Griffith Laboratories U.S.A., Inc.) and GFG (then known as Griffith Laboratories, Inc.) for the policy period of September 30, 1984 to September 30, 1985 (the "84-85 Policy"). A true and correct copy of the 84-85 Policy is attached as **Exhibit B**.

9. The Policies define the "Named Insured" as:

> the organization, including any subsidiary thereof, named in item 1 of the declarations [Griffith Laboratories U.S.A., Inc. and Griffith Laboratories, Inc.] and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded and newly acquired or formed company shall terminate within sixty days of its acquisition of formation unless reported to the company within said sixty days.

Ex. A, Endt. 3; Ex. B, Endt. 3.

10. The Policies each provide a $1 million limit of liability for "each occurrence" and in the aggregate, and obligate AIG to "pay on behalf of the insured all sums which the insured

-3-

shall become legally obligated to pay as damages because of … bodily injury … to which this insurance applies, caused by an occurrence…" *See* Ex. A, Comprehensive General Liability Insurance Coverage Part at 2; Ex. B, Comprehensive General Liability Insurance Coverage Part at 2.

11. Under the Policies, AIG has "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury … even if any of the allegations of the suit are groundless, false or fraudulent…" *Id.*

12. The Policies do not contain any deductible or retention that an insured must satisfy before AIG is obligated to defend a suit.

13. Amounts incurred by AIG pursuant to Policies' defense obligations do not erode the Policies' respective limits of liability.

14. The Policies contain several exclusions, including exclusion (f) (hereinafter, the "Sudden and Accidental Pollution Exclusion") which states as follows:

> This insurance does not apply:
> * * *
> (f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

*Id.*

## The Underlying Suits

15. On September 26, 2018, underlying plaintiffs Susan Kamuda and Edward Kamuda filed a Complaint at Law in the Circuit Court of Cook County, Illinois against STERIGENICS INTERNATIONAL, INC.; STERIGENICS INTERNATIONAL LLC; STERIGENICS U.S., LLC; BOB NOVAK; DANIEL GIBALA; and GTCR, LLC to initiate the Underlying Suits. A

154738308.2
154854760.1

true and correct copy of the Kamuda's Complaint is attached hereto as **Exhibit C**.

16. The Kamuda's Complaint alleges that underlying plaintiffs suffered bodily injury due to the inhalation of ethylene oxide ("EtO") purportedly emitted from a sterilization facility in Willowbrook, Illinois operated by the underlying defendants since at least 1984. *See generally* Ex. C.

17. Following the Kamuda's Complaint, there were dozens of additional lawsuits making substantially allegations filed in 2018 and 2019, leading the Circuit Court of Cook County to consolidate the Underlying Suits for discovery and pretrial purposes.

18. Since October 24, 2019, the Underlying Suits have been guided by a Master Complaint filed by the underlying plaintiffs, which has been amended several times.

19. On August 18, 2020, plaintiffs in the Underlying Suits filed their Second Amended Master Complaint ("SAMC") which, for the first time, named as defendants GFG, GFI, and related entities Griffith Foods Inc. and Griffith Foods Worldwide Inc. ("Griffith Defendants"). A true and correct copy of the SAMC in the Underlying Suits is attached hereto as **Exhibit D**.

20. The SAMC alleges that each of the plaintiffs suffered bodily injury due to inhalation of EtO emitted from the Willowbrook facility. *See generally* Ex. D.

21. The SAMC also alleges, among other things, that the Griffith Defendants "designed and operated the Willowbrook facilities from inception in or about 1984, and directly participated in the operation of the Willowbrook facilities at all relevant times through at least April 15, 1999." *Id.* at ¶ 17.The underlying plaintiffs subsequently filed a Plaintiffs' Third Amended Master Complaint ("TAMC") on October 30, 2020 that named the same Griffith Defendants and made similar allegations. **Exhibit E.**

22. The TAMC alleges that each of the plaintiffs suffered bodily injury due to

inhalation of EtO emitted from the Willowbrook facility. *See generally* Ex. E.

23. The TAMC also alleges, among other things, that the Griffith Defendants "under their previously used names Griffith Laboratories, U.S.A., Inc. and Griffith Laboratories, International, Inc., designed and operated the Willowbrook facilities from inception in or about 1984, and directly participated in the operation of the Willowbrook facilities at all relevant times through at least April 15, 1999." *Id.* at ¶ 17.

24. On April 16, 2020, filed Plaintiffs' Fourth Amended Master Complaint ("FAMC"). **Exhibit F**.

25. The FAMC names only GFI, which the underlying plaintiffs refer to throughout as "Griffith Labs." Ex. E ¶ 1. The FAMC notes that GFI "was formerly known as 'Griffith Laboratories U.S.A., Inc.'" *Id.*

26. The FAMC alleges that the underlying plaintiffs suffered bodily injuries due to, among other things, GFI's "independent acts and omissions throughout the entirety of the period between 1984 and 1999, which caused or contributed to Plaintiffs' injuries." *Id.* at ¶ 5 (listing alleged wrongful acts and omissions).

27. The Griffith Defendants have denied – and continue to deny – any liability to the underlying plaintiffs.

28. A list of suits filed against Griffith that have previously been consolidated as part of the Underlying Suits is attached hereto as **Exhibit G**.

## AIG's Denial of Coverage

29. Following the underlying plaintiffs' filing of the SAMC on August 18, 2020, Griffith conducted a search of its historical records for potentially responsive insurance policies.

30. Griffith located the AIG policies near the end of 2020.

31. On January 29, 2021, Griffith, by and through its coverage counsel, provided AIG with notice of the Underlying Suits, including copies of the Policies and the TAMC. A true and correct copy of Griffith's January 29, 2021 correspondence, including all exhibits, is attached hereto as **Exhibit H**.

32. On February 17, 2021, AIG acknowledged receipt of this notice and requested, among other things, copies of the Policies, which Griffith's counsel immediately provided on the same day.

33. After months of silence, AIG sent a letter to Griffith on October 12, 2021 denying that it had a duty to defend and otherwise denying coverage for Underlying Suits under the Policies. A true and correct copy of AIG's October 12, 2021 correspondence, including all exhibits, is attached hereto as **Exhibit I**.

34. Thus, at all times relevant, AIG has failed and refused to provide Griffith with a defense to the Underlying Suits. AIG has also failed and refused to acknowledge a duty to indemnify Griffith for any damages (whether by settlement, judgment, or otherwise) that Griffith may incur with respect to the Underlying Suits.

35. AIG's October 12, 2021 letter asserts two bases for denying Griffith's claim:

   A. "[t]o the extent that Griffith Foods Group, Inc, Griffith Foods, Inc., Griffith Foods International, Inc., and/or Griffith Foods Worldwide, Inc. were not acquired or formed by the named insured during the policy period; were not owned or financially controlled by Griffith Labs and/or Griffith USA; and/or, were not reported to National Union within 60 days of acquisition or formation, they would not qualify as insureds under the Policies. National Union reserves its rights to limit or deny coverage on these grounds"; and

   B. because the Underlying Suits purportedly fall within the scope of the Sudden and Accidental Pollution Exclusion.

*See* Ex. H at 3-5.

154738308.2
154854760.1

### The Underlying Suits Covered Under the Policies

*Griffith is a Named Insured*

36. GFI and GFG both qualify as a "Named Insured" under the Policies.

37. Item 1 of the Policies' declarations, as amended by Endorsement 3, identifies Griffith Laboratories, Inc. and Griffith Laboratories U.S.A., Inc. as a "Named Insured."

38. On March 9, 2016, Griffith Laboratories, Inc.'s shareholders adopted an amendment to its Articles of Incorporation changing the name of the corporation to Griffith Foods Group Inc. **See Exhibit J.**

39. Griffith Laboratories U.S.A., Inc. has similarly undergone several corporate name changes to GFI as reflected in **Exhibit K**:

   A. on September 27, 1990, Griffith Laboratories U.S.A., Inc. filed a Certificate of Amendment with the Delaware Secretary of State amending its corporate name to Griffith Laboratories Worldwide, Inc.;

   B. on October 22, 1997, Griffith Laboratories Worldwide, Inc. filed a Certificate of Amendment with the Delaware Secretary of State amending its corporate name to Griffith Laboratories International, Inc.;

   C. on January 15, 2016, Griffith Laboratories International, Inc. filed a Certificate of Amendment with the Delaware Secretary of State amending its corporate name to Griffith Foods International Inc.

40. These corporate name changes did not impair any rights that Griffith has under the Policies as GFG and GFI are continuations of the Named Insured organizations in the Policies.

*The Underlying Suits Trigger, Or At Least Potentially Trigger, the Policies and Are Not Excluded*

41. The Policies obligate AIG to "pay on behalf of [an] insured all sums which the insured shall become legally obligated to pay as damages because of … bodily injury … to which this insurance applies, caused by an occurrence…" *See* Ex. A, Comprehensive General Liability Insurance Coverage Part at 2; Ex. B, Comprehensive General Liability Insurance Coverage Part at

-8-

42. The Policies also obligate AIG to defend any "suit" against an insured "seeking damages on account of such bodily injury … even if any of the allegations of the suit are groundless, false or fraudulent…" Ex. A, Comprehensive General Liability Insurance Coverage Part at 2; Ex. B, Comprehensive General Liability Insurance Coverage Part at 2.

43. The Underlying Suits are each "suit" that seeks damages because of alleged "bodily injury" caused by one or more "occurrences" arising out of Griffith's business during the periods of the Policies.

44. The Sudden and Accidental Pollution Exclusion is inapplicable here because, among other things:

    A. Illinois law holds that the Sudden and Accidental Pollution Exclusion is inapplicable to the alleged "discharge, dispersal, release or escape" of any purported "irritants, contaminants or pollutants" where such "discharge, dispersal, release or escape" was made pursuant to a lawfully issued permit and the Underlying Suits allege at least in part that the Willowbrook facility released EtO while operating under a lawfully issued permit from the Illinois Environmental Protection Agency, *see, e.g.*, FAMC ¶¶ 57-58, 60, 62, 71-104, 109, 277-78, 286-88; and

    B. the Underlying Suits at least potentially allege that any "discharge, dispersal, release or escape" of EtO was "sudden and accidental" as that term is interpreted under Illinois law, *see* FAMC ¶¶ 71-104 (generally alleging that GFI negligently breached various duties through their operation of the Willowbrook facility via negligent and improper ownership, maintenance, training, and control and that those breaches proximately caused the underlying injuries.)

45. No other exclusions or limitations in the Policies apply here.

46. Griffith has complied in all material respects with the conditions and requirements of the Policies, or such conditions and requirements have been waived or their satisfaction otherwise excused by operation of law or by the conduct of AIG.

154738308.2
154854760.1

47. Therefore, pursuant to the terms and conditions of the Policies, AIG's duty to defend was triggered by the Underlying Suits, including the TAMC and FAMC.

48. Moreover, [p]ursuant to the terms and conditions of the Policies, AIG is obligated to indemnify Griffith in the event that Griffith incurs "damages" (including but not limited to any settlement(s) or judgment(s)) in connection with the Underlying Suits.

## COUNT ONE
**(Breach of Contract – AIG's Duty to Defend Under the 83-84 Policy)**

49. Griffith realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

50. Griffith and AIG entered into a legally binding written contract when AIG issued the 83-84 Policy.

51. Griffith provided notice of the Underlying Suits to AIG under the 83-84 Policy.

52. By failing and refusing to perform its duty to defend Griffith with respect to the Underlying Suits as set forth above, AIG has breached the 83-84 Policy.

53. As a direct and proximate result of such breach of contract, Griffith has been deprived of the benefit of its commercial general liability and has incurred direct damage on account thereof in excess of $75,000.

## COUNT TWO
**(Breach of Contract – AIG's Duty to Defend Under the 84-85 Policy)**

54. Griffith realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

55. Griffith and AIG entered into a legally binding written contract when AIG issued the 84-85 Policy.

56. Griffith provided notice of the Underlying Suits to AIG under the 84-85 Policy.

154738308.2
154854760.1

57. By failing and refusing to perform its duty to defend Griffith with respect to the Underlying Suits as set forth above, AIG has breached the 84-85 Policy.

58. As a direct and proximate result of such breach of contract, Griffith has been deprived of the benefit of its commercial general liability and has incurred direct damage on account thereof in excess of $75,000.

**COUNT THREE**
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201 – 83-84 Policy)**

59. Griffith realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

60. AIG has a duty to defend Griffith with respect to any suit that is at least potentially covered under the 83-84 Policy.

61. An insurer in doubt over whether a suit against its insured is at least potentially covered under its policy must either: (1) defend its insured under a reservation of rights; or (2) promptly file a declaratory judgment action to resolve any questions concerning its duty to defend.

62. Where a suit against an insured is at least potentially covered under an insurer's policy, but the insurer fails to take either of the foregoing courses of action, that insurer is estopped from asserting defenses to coverage.

63. For the reasons set forth in detail above, the Underlying Suits are covered or, at a minimum, at least potentially covered, under the 83-84 Policy.

64. AIG failed and refused to defend Griffith in the Underlying Suits under a reservation of rights and did not promptly file a declaratory judgment action with respect to its duty to defend.

65. AIG is, therefore, estopped from asserting defenses to coverage.

66. Moreover, AIG has denied any duty to indemnify Griffith with respect to the Underlying Suits.

67. An actual and justiciable controversy thus exists between Griffith and AIG as the parties' rights and obligations under the 83-84 Policy, including without limitation whether: (1) AIG has a duty to defend Griffith in the Underlying Suits; (2) AIG is estopped from asserting defenses to coverage; and (3) whether AIG has a duty to indemnify Griffith for any "damages" Griffith may incur in the Underlying Suits.

68. Accordingly, Griffith seeks an order pursuant to 28 U.S.C. § 2201 declaring the parties respective rights and obligations with respect to the 83-84 Policy, including that: (a) AIG has a duty to defend Griffith in the Underlying Suits under the 83-84 Policy, (b) as a result of its breach of its duty to defend Griffith, AIG is estopped from raising defenses to coverage under the 83-84 Policy, and (c) AIG has a duty to indemnify Griffith under the 83-84 Policy for any damages Griffith may incur in the Underlying Suits.

## COUNT FOUR
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201 – 84-85 Policy)**

69. Griffith realleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

70. AIG has a duty to defend Griffith with respect to any suit that is at least potentially covered under the 84-85 Policy.

71. An insurer in doubt over whether a suit against its insured is at least potentially covered under its policy must either: (1) defend its insured under a reservation of rights; or (2) promptly file a declaratory judgment action to resolve any questions concerning its duty to defend.

-12-

72. Where a suit against an insured is at least potentially covered under an insurer's policy, but the insurer fails to take either of the foregoing courses of action, that insurer is estopped from asserting defenses to coverage.

73. For the reasons set forth in detail above, the Underlying Suits are covered or, at a minimum, at least potentially covered, under the 84-85 Policy.

74. AIG failed and refused to defend Griffith in the Underlying Suits under a reservation of rights and did not promptly file a declaratory judgment action with respect to its duty to defend.

75. AIG is, therefore, estopped from asserting defenses to coverage.

76. Moreover, AIG has denied any duty to indemnify Griffith with respect to the Underlying Suits.

77. An actual and justiciable controversy thus exists between Griffith and AIG as the parties' rights and obligations under the 84-85 Policy, including without limitation whether: (1) AIG has a duty to defend Griffith in the Underlying Suits; (2) AIG is estopped from asserting defenses to coverage; and (3) whether AIG has a duty to indemnify Griffith for any "damages" Griffith may incur in the Underlying Suits.

78. Accordingly, Griffith seeks an order pursuant to 28 U.S.C. § 2201 declaring the parties respective rights and obligations with respect to the 84-85 Policy, including that: (a) AIG has a duty to defend Griffith in the Underlying Suits under the 84-85 Policy, (b) as a result of its breach of its duty to defend Griffith, AIG is estopped from raising defenses to coverage under the 84-85 Policy, and (c) AIG has a duty to indemnify Griffith under the 84-85 Policy for any damages Griffith may incur in the Underlying Suits.

154738308.2
154854760.1

## PRAYERS FOR RELIEF

WHEREFORE, Griffith prays for the following relief:

A. Enter a judgment in favor of Griffith and against AIG, as requested herein, on each of the Counts in Griffith's Complaint;

B. Award Griffith its actual and consequential damages sustained as a result of AIG's breach of the Policies as set forth in Count One and Count Two in an amount to be established through proof, including but not limited to, Griffith's attorneys' fees, expenses, and costs to defend the Underlying Suits;

C. Enter a declaration pursuant to Count Three that: (a) AIG has a duty to defend Griffith in the Underlying Suits under the 83-84 Policy, (b) as a result of its breach of its duty to defend Griffith, AIG is estopped from raising defenses to coverage under the 83-84 Policy, and (c) AIG has a duty to indemnify Griffith under the 83-84 Policy for any damages Griffith may incur in the Underlying Suits;

D. Enter a declaration pursuant to Count Four that: (a) AIG has a duty to defend Griffith in the Underlying Suits under the 84-85 Policy, (b) as a result of its breach of its duty to defend Griffith, AIG is estopped from raising defenses to coverage under the 84-85 Policy, and (c) AIG has a duty to indemnify Griffith under the 84-85 Policy for any damages Griffith may incur in the Underlying Suits;

E. Enter a judgment awarding Griffith its reasonable attorney fees and expenses incurred in connection with this action;

F. Enter a judgment awarding Griffith any pre-judgment interest and post-judgment interest under applicable law; and

G. Enter a judgment awarding Griffith its costs of court and any other and further relief to which it may justly be entitled.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Griffith demands a trial by jury on all matters so triable.

Dated: November 30, 2021

Respectfully submitted,

By: */s/ James M. Davis*

James M. Davis, Bar No. 6226698
JamesDavis@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000

Bradley H. Dlatt, Bar No. 6323821
BDlatt@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone: 312.324.8400

*Counsel for Griffith Foods International Inc. f/k/a Griffith Laboratories U.S.A., Inc. and Griffith Foods Group Inc. f/k/a Griffith Laboratories, Inc.*

154738308.2
154854760.1