**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sterigenics, U.S., LLC, | |
| Plaintiff, | Case No. 21-cv-4581 |
| v. | |
| National Union Fire Insurance Company Of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |
| Griffith Foods International, Inc., et al., | |
| Plaintiffs, | Case No. 21-cv-6403 |
| v. | |
| National Union Fire Insurance Company of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In this insurance coverage dispute, Plaintiffs Griffith Foods International, Inc. and Griffith Foods Group, Inc. (collectively, "Griffith") and Plaintiff Sterigenics U.S., LLC brought separate but related lawsuits against their insurer, National Union Fire Insurance Company of Pittsburgh, P.A. related to an underlying action pending in Illinois state court. The underlying suit claims that individuals were harmed by

1

exposure to discharges of ethylene oxide (EtO) from sterilization facilities in Willowbrook, Illinois. Previously, this Court granted Sterigenics' and the Griffith Plaintiffs' motions for judgment on the pleadings regarding the duty to defend, ruling that National Union owes Sterigenics and Griffith Labs a duty to defend the underlying state court complaint.

## I.      Background

The following is a brief summary of the factual and procedural background in this case. This order otherwise presumes familiarity with the history of this case.

### A.      Underlying Litigation and the Policies

In Illinois state court in the Circuit Court of Cook County, multiple plaintiffs sued several defendants, including two of the Plaintiffs here—Sterigenics and Griffith Food International, Inc., formerly known as Griffith Laboratories U.S.A., Inc. (hereinafter Griffith Labs). [Case No. 21-cv-4581, [15] ¶¶ 13, 16; 15-1].[1] *In re: Willowbrook Ethylene Oxide Litigation,* 18 L 10475. In the (operative) fourth amended complaint, the underlying plaintiffs allege that they suffered bodily and personal injuries as a result of exposure to discharges of ethylene oxide (EtO) from sterilization facilities Sterigenics currently owns in Willowbrook, Illinois. [15] ¶ 14. The fourth amended complaint serves as the master complaint for hundreds of actions which the state court consolidated for pretrial and discovery purposes. *Id.* ¶ 14 & n.2.

---

[1] Because Plaintiffs' complaints contain similar allegations, concern the same insurance policies, and the briefings contain largely similar arguments, this Court cites to the Sterigenics operative complaint (21-cv-4581 at Dkt. 15) for propositions that apply to both Plaintiffs and to the Sterigenics docket entries, unless the Court notes that it is referring to the Griffith docket. (21-cv-6403).

The underlying complaint asserts state-law claims against Sterigenics and Griffith Labs for negligence, negligent training, negligent supervision, willful and wanton conduct, strict liability, civil battery, and public nuisance. [15-1].

This dispute centers around two commercial general liability policies that National Union insures. [15] ¶ 17. Policy number GLA-945-70-58RA was effective from September 30, 1983 to September 30, 1984; policy number GLA-194-00-11RA was effective from September 30, 1984 to September 30, 1985. *Id.*

### B. National Union Denies Coverage

After National Union denied coverage to Sterigenics and the Griffith Plaintiffs, Sterigenics and the Griffith Plaintiffs brought separate suits against National Union in this Court. In its amended complaint, Sterigenics sought a judgment declaring that National Union has a duty to defend (Count I) and a duty to indemnify (Count II), as well as damages resulting from National Union's alleged breach of the Policies (Count III). [15] ¶¶ 57–82. The Griffith Plaintiffs asserted claims for breach of contract based on National Union's refusal to defend (Counts I and II); they also sought declaratory judgment ordering National Union to defend and indemnify and estopping National Union from asserting coverage defenses (Counts III and IV). Griffith [1] ¶¶ 49–78.

### C. This Court's Order and Subsequent Coverage Litigation

On August 3, 2022, this Court ruled that National Union owes Sterigenics and Griffith Labs a duty to defend based on the underlying fourth amended complaint. [40]. The Court also ruled that National Union was not estopped from asserting coverage defenses. *Id.* (hereafter, "Duty to Defend Order"). In light of the status of

the underlying action, however, the issue of indemnity was not ripe. In January and February 2023, Plaintiffs each moved to recover past defenses costs.

In January 2023, Griffith filed in state court an action against other insurers (not National Union) ((Cook Cnty. Cir. Ct. No. 2023-CH-00782, hereafter, "Illinois State Coverage Action"). In February 2023, another insurer, Zurich American Insurance Company, filed an action in the Superior Court of the State of Delaware (the "Delaware State Action"). *See* [Griffith, 69-2]. In May 2023, Sterigenics filed a petition to intervene in the Illinois State Coverage Action. *See* [96 at 4].

### D. Pending Motions

Now pending before this Court are multiple motions filed by National Union, the Griffith Plaintiffs, and Sterigenics. For the following reasons, National Union's motion for leave to file counterclaims [Griffith [32]], motion for leave to file a third-party complaint [Griffith [34]], and Rule 12(b)(7) motion to dismiss [Griffith [68]] are denied; the Griffith Plaintiffs' motion to dismiss the remaining non-duty to defend claims [Griffith [65]] is granted; and the Griffith Plaintiffs' motion for past defense costs [Griffith [59]] is granted as modified in their reply brief. Further, National Union's motion for leave to file counterclaims [42], motion for leave to file a third-party complaint [44], and National Union's motion to dismiss [71] are denied; Sterigenics' motion to dismiss the remaining non-duty to defend claims [86] is granted, and Sterigenics' motion for past defense costs [69] is granted as modified in its reply brief.

## II.     Analysis

### A.      National Union's Motion for Leave to File Counterclaims

The Court begins with National Union's motion for leave to file counterclaims in both cases. In its proposed counterclaims, National Union seeks "to obtain declaratory relief from [the Griffith Plaintiffs and Sterigenics] relative to this Court's finding that National Union owes a duty to defend Griffith and Sterigenics U.S., LLC ('Sterigenics') against underlying litigation." [33-1 at 2; 43-1 at 2]. National Union's counterclaims seek a declaration, among other things, that the "Policies do not provide coverage to [Griffith and Sterigenics] for the Underlying Litigation." [33-1 at 18, 43-1 at 20].

It is well-established that under Rule 15, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is not automatically granted; instead it is in the court's discretion. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005).

National Union argues that its proposed Counterclaims are compulsory under Rule 13(a) because they arise out of the same facts and subject matter as the complaints in this case and do not require adding another party. National Union contends that "there have been no coverage determinations outside of the Court's limited interlocutory ruling on the duty to defend, a decision subject to revision after the completion of discovery." [33 at 9; 43 at 9]. Plaintiffs respond that National Union must comply with this Court's Duty to Defend Order and its proposed counterclaims "are futile because they seek to relitigate issues this Court already decided for duty

to defend purposes and are untimely." [47 at 2].

First, the Court agrees with Plaintiffs that National Union cannot avoid the Duty to Defend Order via newly proposed counterclaims. While this Court did not rule on National Union's duty to indemnify because that issue was not ripe, it ruled that National Union owes Plaintiffs a duty to defend. It is well-settled under Illinois law that "[i]f the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Illinois law is also clear that "an insured contracts for and has a right to expect two *separate and distinct duties* from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk." *Chandler v. Doherty*, 702 N.E.2d 634, 637 (4th Dist. 1998) (emphasis added); *see also Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 891 (7th Cir. 2017). As the court in *Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, No. 20 C 7006, 2021 WL 1962403 (N.D. Ill. May 17, 2021) explained, "[t]he question of whether an insurer must indemnify is not ripe until the underlying litigation ends [while] the duty to defend [] depends on reading the underlying complaint and can thus be determined on the pleadings." *Id.* at *4.

In its Duty to Defend Order this Court expressly stated that it had "adjudicated National Union's defense obligations" with respect to the underlying master complaint [40], so National Union "*must* defend an action even though it may not ultimately be obligated to indemnify the insured." *Illinois Mun. League Risk Mgmt.*

*Ass'n v. City of Genoa*, 51 N.E.3d 1133, 1136 (2016) (emphasis added); *see also Am. Serv. Ins. Co. v. China Ocean Shipping Co. (Americas) Inc.*, 2014 IL App (1st) 121895, ¶ 19, 7 N.E.3d 161, 170 (holding that plaintiff owed defendants a duty to defend was the law of the case). National Union did not and does not challenge the Duty to Defend Order through a request for appeal or reconsideration motion.

Next, as Plaintiffs point out, Rule 13(a) requires that "a pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party…." Fed. R. Civ. P. 13(a). The Court is not persuaded by National Union's argument that "the Counterclaims did not become relevant until the Court determined that the Fourth Amended Master Complaint potentially implicated a duty to defend as a threshold matter." [Griffith, 51 at 4]. In November 2021 and January 2022, National Union filed answers in these cases, asserting in its affirmative defenses that, among other things, "the Policies do not provide coverage to an Insured for damages sought in [the Underlying Litigation] that are not damages because of 'bodily injury'"; "the Pollution Exclusions preclude coverage for the damages sought in the Underlying Litigation"; and each Plaintiff failed to establish it qualified as a Named Insured. [19; Griffith [11]]. Although National Union maintains that its proposed counterclaims did not "become relevant" until this Court's Duty to Defend Order in August 2022, National Union raised the same issues in its affirmative defenses in late 2021 and early 2022. *See id*. and [43, Griffith [33]].

National Union relies on *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343 (7th Cir. 2015) to argue that this Court should grant it leave to amend. But *Life*

*Plans* was decided at a different procedural posture, and the plaintiff there sought amendment "promptly after discovering a factual basis for its new claims." *Id*. at 358. This case does not involve a defendant discovering new facts, prompting new claims.[2] This is not a situation where the counterclaim matured only after National Union served its answer. *See Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990).

National Union also contends that this Court did not decide whether Sterigenics is not a "named insured" under the Policies. [43 at 5, 9]. But the Court concluded that Sterigenics is a "named insured" for the purposes of National Union's duty to defend. [40 at 9]. Finally, National Union argues that "[t]he Master Complaint forms only a portion of the operative factual allegations in some of the lawsuits in the Underlying Litigation. [It] does not operate as a complete pleading in any underlying lawsuit." [51 at 3]. This Court determined the duty to defend based on the underlying Fourth Amended Master Complaint. That was the subject of the parties' dispute before this Court.[3] Moreover, National Union raised this argument for the first time in its reply briefs. *See* [58]; Griffith, [51]. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("arguments raised for the first time in a reply brief are waived.")

---

[2] National Union also argues that it is "seek[ing] discovery" on the Policies' pollution exclusion and personal injury coverage. [Griffith, 33 at 5]. But this Court determined duty to defend, as required in Illinois, by "compar[ing] the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has arisen." *Gen. Agents Ins. Co. of Am.,* 828 N.E.2d at 1098.

[3] In the prior briefing, National Union discussed the Underlying Suits as a single "Underlying Litigation" and did not assert that the master complaint was not a "complete pleading" or distinguish between underlying claimants. *See* [24].

For these reasons, National Union's motions for leave to file counterclaims [32], [42] are denied.

### B.   National Union's Rule 12(b)(7) Motions to Dismiss

The Court next addresses National Union's motion to dismiss Griffith's Complaint and Sterigenics's Amended Complaint pursuant to Rule 12(b)(7). According to National Union, both lawsuits lack all necessary parties. National Union says that in Griffith's Illinois State Coverage Action Griffith seeks insurance coverage from at least eleven insurance carriers under more than 70 insurance policies in effect between 1983 to 2019 for the same underlying torts Griffith seeks coverage from National Union in this proceeding (National Union issued two of the 72 policies at issue).

Under Rule 12(b)(7), a party may seek to dismiss a lawsuit for failure to join a party under Rule 19. Rule 19(a)(1) provides that a party "must be joined" if (1) without that person, the court cannot provide "complete relief among existing parties"; (2) the person claims an interest in the action and proceeding with the case without that person may "impair or impede the person's ability to protect the interest" or leave an "existing party" subject to "inconsistent obligations." Fed. R. Civ. P. 19(a)(1)). "The purpose of Rule 19 under the Federal Rules of Civil Procedure is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quotation omitted). However, dismissal "is not the preferred outcome," *Ochs v. Hindman*, 984 F. Supp.

2d 903, 908 (N.D. Ill. 2013) and the movant "bears the burden of demonstrating that the absent party is a necessary and indispensable party that must be joined." *Id.* at 906.

National Union argues that the existence of other primary insurers means that this suit should be dismissed because "the scope of coverage provided by the Absent Insurers are necessary to determine proper trigger and allocation issues presented by Plaintiffs' claims, including defense damage claims." [Griffith, 69 at 9]. To support its position, National Union relies on *Sta-Rite Industries, Inc. v. Allstate Ins. Co.*, 96 F.3d 281 (7th Cir. 1996). *Sta-Rite* is distinguishable on a number of grounds, however. It involved a parallel state court proceeding in Wisconsin. 96 F.3d at 283. The *Sta-Rite* plaintiffs sued a number of insurers in federal court and the *same day* sued another insurer in state court alleging the same claims. *Id*. Here, Sterigenics filed its suit in August 2021 and Griffith filed in November 2021. Griffith filed the state court action in January 2023. The Seventh Circuit in *Sta-Rite* concluded that the district court's dismissal under Rule 12(b)(7) was correct because of the risk of duplicative litigation given the parallel state court action and "issues of first impression under Wisconsin insurance law." 96 F.3d at 285. *See CXA Corp. v. Am. Fam. Ins. Co.*, No. 15 CV 11412, 2016 WL 6582577, at *4 (N.D. Ill. Nov. 7, 2016) (distinguishing *Sta-Rite* in part because it was based on Wisconsin substantive law). And importantly, unlike here, in *Sta-Rite*, there was no duty to

defend ruling. To the contrary in *Sta-Rite* the only progress in federal court had been the exchange of mandatory discovery. *Id.* at 287.[4]

Plaintiffs counter that National Union's duty to defend under the Policies was "triggered…regardless of whether National Union may have rights to later seek contribution from other insurers *after* it has paid Griffith's defense costs." [Griffith, 83 at 2]. For its part, National Union is concerned about potential inconsistent rulings, but courts have addressed this concern before. *See Tokio Marine Specialty Ins. Co.*, 2021 WL 1962403, at *3 ("to the extent there is some risk of an inconsistent judgment, a future contribution action would remedy that concern.") (citing *Rhone–Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995)).

Plaintiffs also argue that Rule 19(a)'s requirements are not met because this Court can accord "complete relief among existing parties." [73 at 7]. *See First Pros. Ins. Co. v. Florendo*, No. 11-CV-197-DRH, 2011 WL 5325710, at *4 (S.D. Ill. Nov. 3, 2011) ("[T]he term 'complete relief' refers only to 'relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'") (quoting *Davis Companies*, 268 F.3d at 484). National Union does not directly address this argument other than to argue that this Court could resolve the coverage dispute "in a single, complete action, with all insurers present." [76 at 6]. However this Court determined the rights and duties of the parties in this case as it relates to duty to defend the underlying master complaint. And for the reasons explained further below, the Court will grant Plaintiffs' motions to voluntarily

---

[4] Moreover, the Seventh Circuit ultimately affirmed on an alternative ground, lack of subject matter jurisdiction, that became evident on appeal. 96 F.3d 281.

dismiss the non-duty-to-defend claims. Thus the Court finds that National Union has not met its burden to show that dismissal under Rule 12(b)(7) is warranted. Therefore National Union's Rule 12(b)(7) motions to dismiss [68] [71] are denied.

### C. National Union's Motions to File a Third-Party Complaint

In the alternative to dismissal under Rule 12(b)(7), National Union requests that the Court grant its motion for leave to file its third party complaint under Rule 14 so it can implead the Absent Insurers as third-party defendants. [Griffith, 69 at 12]. It argues that it has a "valid contribution action" against Zurich and other insurers, and seeks a declaration that this Court's Duty to Defend Order applies equally to Zurich and other insurers. [45 at 2, 6].

Equitable contribution "as it pertains to insurance law is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004). National Union recently reiterated that it seeks to implead other insurers "for purposes of obtaining contribution predicated on this Court's duty to defend ruling." [96 at 2]. Notably, National Union does not contend that it cannot bring a separate contribution action against Absent Insurers.

In its motion to dismiss, National Union argued that "Griffith's joinder of the other primary insurers would destroy diversity jurisdiction" [69 at 2]. Anticipating this issue as it relates to its Rule 14 motion, National Union stated on the other hand that its "motion to implead the other insurers will not destroy diversity jurisdiction

because the Court has supplemental jurisdiction over the third-party claim pursuant to 28 U.S.C. § 1367(a)." *Id.* n. 1. National Union does not cite authority for this proposition. And the language of the statute, 28 U.S.C. § 1367(b) and the case law compels a different result. *See* 28 U.S.C. § 1367(b) (explaining limits on supplemental jurisdiction under subsection (a)); *see also Stromberg Metal Works, Inc. v. Press Mech., Inc.,* 77 F.3d 928, 932 (7th Cir. 1996); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387-89 (1998).[5]

Even if jurisdiction were secure, for the reasons explained more fully below related to Plaintiffs' motion for voluntary dismissal, the Court finds that permitting National Union to implead Absent Insurers at this stage is not warranted. Therefore, National Union's motions for leave to file a third-party complaint [34], [44] are denied.

### D. Plaintiffs' motions to dismiss the remaining non-duty to defend claims

Plaintiffs move under Rule 41(a)(2) to voluntarily dismiss without prejudice their non-duty to defend claims. Under Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." A district court has discretion to allow a motion to dismiss under Rule 41(a)(2). *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971). Dismissal "should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* It is defendant's burden to show "plain legal prejudice" would result from the dismissal. *See Simons v. Fox*, 725 F. App'x 402, 406

---

[5] The Court has an independent obligation to ensure the existence of federal subject matter jurisdiction. *See Smith v. Am. Gen. Life & Acc. Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *Craig v. Ont. Corp.*, 543 F.3d 872, 875 (7th Cir. 2008).

(7th Cir. 2018).

To narrow the issues and facilitate judicial economy, Griffith now "seeks to voluntarily dismiss all outstanding claims not decided in the Duty to Defend Order or sought as ancillary relief (defense costs) thereto, namely, Counts I and II (breach of contract) of its Complaint, and the portion of Counts III and IV (declaratory judgment) relating to National Union's duty to indemnify." [65 at 4]. Sterigenics similarly moved to voluntarily dismiss its declaratory judgment claim addressing the duty to indemnify (Count II) and breach of contract claim (Count III) [86]. Plaintiffs argue that National Union will not be prejudiced by the voluntary dismissal of all remaining claims since the Court already decided that it owes Griffith a duty to defend, and dismissing the remaining claims allows the Court and parties to reach the damages claims and conclude this action.

National Union responds that Plaintiffs delayed in seeking dismissal of these claims, Plaintiffs' attempt to separate duty to defend and duty to indemnify claims is improper claim splitting, and dismissal of the claims could prejudice National Union if the state court applies differing interpretations to, for example, the pollution exclusion, which could prevent National Union from seeking contribution from Griffith's other insurers.

First, as discussed, treating the duty to defend and duty to indemnify separately is well-established under Illinois law. *See Gen. Agents Ins. Co. of Am.,* 828 N.E.2d at 1098. Further, this Court's Duty to Defend Order did not address contribution nor could it have. *See Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.,* 2016 IL

App (1st) 151606-U, P42 (issue of contribution was "a different issue that could not have been raised until the determination of the Insurers' duty to defend."). With the duty to defend claim decided, equitable contribution then "permits an insurer who has paid for an entire loss to be reimbursed by other insurers who are also liable for the loss, and it is applied where one insurer has paid a debt equally owed by other insurers." *Employers Ins. of Wausau v. James McHugh Constr., Co.*, 144 F.3d 1097, 1107 (7th Cir. 1998) (citation omitted).

The cases cited by National Union for the proposition that Plaintiffs are engaged in improper claim splitting are not persuasive. *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986 (Ill. App. Ct. 2009), *Elmhurst Lincon-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659 (N.D. Ill. 2016), *Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 387 N.E.2d 831 (1st Dist. 1979) [96 at 6], were, respectively, a negligent design case, involved a brokerage contract, and an ERISA suit. They did not discuss an insurer's duties to defend and indemnify. On the other hand, courts have explained that "[a] victim of wrongdoing is not generally required to sue all the wrongdoers...." *Varlen Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 09-CV-7915, 2011 WL 3664796, at *4 (N.D. Ill. Aug. 17, 2011) (quoting *Rhone–Poulenc Inc.*, 71 F.3d at 1301). So in the case of "multiple, overlapping coverage the insurers who are not sued will not be bound by determinations made in a suit to which they are not parties, and the insurers who are sued can if they lose seek contribution afterward from the others." *Id.*

According to National Union, it will be prejudiced by being prevented from

adjudicating "the allocation of Sterigenics' defense and potential indemnity in a consistent fashion in this forum" and it could be prevented from seeking contribution from other insurers. [96 at 7; 70 at 6]. But National Union does not cite any authority that this Court's Duty to Defend Order will bar it from seeking contribution from other insurers in another action. *Cf. Varlen Corp.*, 2011 WL 3664796, at *4. ("In a case of multiple, overlapping coverage the insurers who are not sued will not be bound by determinations made in a suit to which they are not parties, and the insurers who are sued can if they lose seek contribution afterward from the others."). Although excessive delay is one factor for the Court to consider (*Pace v. S. Exp. Co.*, 409 F.2d 331 (7th Cir. 1969)), the Court does not find that Plaintiffs excessively delayed in moving to voluntarily dismiss certain claims.[6] And National Union has not shown it will suffer "plain legal prejudice."

This is a complex and protracted suit, both in the underlying case and the insurance coverage actions. As often happens, multiple coverage suits have emerged. National Union says it is litigating coverage for these claims in three separate actions. [96 at 5]. Considering the posture of the case before this Court, the multiple coverage disputes, and the stage of the Illinois State Coverage Action, the Court finds that continued litigation in this Court would not serve the parties or facilitate judicial efficiency. Finally, the Court does not agree with National Union that dismissal should be with prejudice. *See Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 332 (7th Cir. 2021) (dismissal without prejudice of indemnity claim).

---

[6] *Pace*, 409 F.2d 331, cited by National Union, involved an automobile accident; it was not an insurance coverage case.

Accordingly, the Court in its discretion concludes that dismissal of Plaintiff's non duty-to-defend claims is warranted. Plaintiffs' motions for voluntary dismissal [65] [86] of the remaining non duty to defend claims are granted.

### E. Griffith's Motion for Past Defense Costs

The Court now turns to Plaintiffs' motions for past defense costs. District courts "have wide discretion in determining the appropriate amount of attorneys' fees and costs." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Under *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), where "there are market incentives [for the party seeking fees] to economize, there is no occasion for painstaking judicial review." *Id.* at 1076. *See also USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 46 F.4th 571, 581 (7th Cir. 2022) ("The market-tested presumption applies when, following an insurer's breach of the duty to defend, a policyholder has supervised and *incurred* legal fees without any expectation of payment by the insurer."). Further, under Illinois law, if a lawsuit "pleads several theories of recovery, even if only one theory falls within the insurance policy's coverages, the insurer owes a duty to defend the entire lawsuit." *Farmers Auto. Ins. Ass'n v. Neumann*, 2015 IL App (3d) 140026, ¶ 11, 28 N.E.3d 830, 834 (2015); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n. 2 (2010).

Griffith requests that this Court enforce its Duty to Defend Order against National Union by awarding Griffith past defense costs for the Underlying Suits. Griffith moves for a judgment for past defense costs from January 29, 2021 through August 31, 2022. In its reply brief, Griffith reduced the total amount it seeks to

$16,017,702.62. In support of its request for defense costs, Griffith submitted sworn Declarations of its General Counsel David Kim. [Griffith [59], Exh. A ("Kim Declaration"); 80]. Kim is familiar with and reviewed the legal expenses Griffith incurred in defending the Underlying Suits. [59 at 7]. Griffith attaches invoices, checks and ACH receipts, as well as a summary spreadsheet of the defense invoices, amounts written-off, amounts paid to date, and sum of amounts remaining to be paid. *Id*. at 8. Kim attests that he believes these legal expenses to be reasonable in light of the allegations and magnitude of the Underlying Suits. (Kim Declaration, ¶ 16).

Griffith argues that under *Taco Bell Corp.* 388 F.3d 1069, this Court need not scrutinize its defense costs because where "there are market incentives [for the party seeking fees] to economize, there is no occasion for painstaking judicial review." *Id*. at 1076. National Union counters that *Taco Bell*'s presumption of reasonableness applies only to covered claims. However National Union's objections to the defense costs motions largely seek to relitigate the Duty to Defend Order. As explained, the duty to defend applies to the entire lawsuit (*Farmers Auto. Ins. Ass'n*, 28 N.E.3d 830; *Pekin Ins. Co.*, 930 N.E.2d 1011), and National Union may seek contribution separately. In light of this Court's Duty to Defend Order, National Union cannot delay paying defense costs. *See Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092 (Ill. 2005).

National Union also objects to certain of Griffith's costs for clerical or data entry or management work, as well as some vague entries. However generally the Court is not required to "scrutin[ize] [] line-item entries". *Metavante Corp. v. Emigrant Sav.*

*Bank*, 619 F.3d 748, 774 (7th Cir. 2010). And National Union does not make any specific objections to attorney hourly rates. Finally, National Union contends that Griffith has not paid 100% of the defense costs. But as Griffith points out, the Seventh Circuit recently clarified that "payment in full is not a requirement for the presumption of reasonableness to apply." *USA Gymnastics,* 46 F.4th at 581.

Therefore, this Court grants in large part Griffith's motion for past defense costs.

### F. Sterigenics' Motion for Past Defense Costs

Sterigenics requests that this Court enforce its Duty to Defend Order against National Union by awarding Sterigenics past defense costs incurred from February 1, 2021 to September 30, 2022 for the Underlying Litigation. In its reply brief Sterigenics requests an adjusted total amount of $75,502,938.25.

Sterigenics submits sworn declarations of Assistant General Counsel Martha Stevens Sullivan. [69-1; 94-1]. Sullivan is the Assistant General Counsel to Sotera Health Company, providing shared legal services to all parts of Sotera Health, including Sterigenics U.S., LLC. [69-1 at ¶ 2]. She attests that Sterigenics incurred over $75 million in approved defense fees, costs, and other expenses in connection with the Underlying Litigation. *Id.* ¶ 4. She further attests that these expenses are correct and have been necessarily incurred in defending the underlying litigation, and were not out of proportion to the stakes in the underlying litigation. *Id.* ¶¶ 5, 8.

National Union's response, similar to its response to the Griffith motion, largely seeks to relitigate the Duty to Defend Order. National Union objects arguing Sterigenics' motion is supported by insufficient documentation, but Sterigenics points

out its motion was supported by documentation showing paid or soon-to-be paid amounts vendor-by-vendor and invoice-by-invoice, and Sterigenics submitted further supporting documentation attached its reply. *See* [67, 92, 94-1]. Sullivan also specified cost-saving measures: "Sterigenics negotiated discounts on certain fees, including discounted hourly rates and alternate fee agreements with outside counsel, discounted rates with other service providers, cost-sharing with other parties where appropriate, and engaged lower-cost providers where appropriate." [69-1 at ¶ 6]. National Union also objects to invoices to Sotera, Sterigenics' holding company. However Sterigenics' reply and supplemental declaration affirm that all the Reimbursable Expenses were incurred and paid by Sterigenics. [94-1 ¶ 4].

The Court finds that Sterigenics submitted sworn declarations and supporting documentation sufficient for the presumption of reasonableness to apply. *See Taco Bell Corp.* 388 F.3d 1069; *USA Gymnastics*, 46 F.4th 571. Therefore, this Court grants in large part Sterigenics' motion for past defense costs.

## IV. Conclusion

For the reasons explained above, in Griffith, 21-cv-06403, National Union's motion for leave to file counterclaims [32], motion for leave to file a third-party complaint [34], and Rule 12(b)(7) motion to dismiss [68] are denied; the Griffith Plaintiffs' motion to dismiss the remaining non-duty to defend claims [65] is granted; and the Griffith Plaintiffs' motion for past defense costs [59] is granted as modified in their reply brief. Further, in Sterigenics, 21-cv-04581, National Union's motion for leave to file counterclaims [42], motion for leave to file a third-party complaint [44], and

National Union's motion to dismiss [71] are denied; Sterigenics' motion to dismiss the remaining non-duty to defend claims [86] is granted, and Sterigenics' motion for past defense costs [69] is granted as modified in its reply brief.

The Court has declared that National Union owes Griffith and Sterigenics a duty to defend the underlying fourth amended complaint and owes Griffith $16,017,702.62 in past defense costs and owes Sterigenics $75,502,938.25 in past defense costs. The Clerk is directed to enter judgment accordingly. Civil case terminated.

E N T E R:

Dated: July 25, 2023

_____
MARY M. ROWLAND
United States District Judge